NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0344n.06

No. 25-5307

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jul 30, 2026
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE MIDDLE DISTRICT OF |
| MICHAEL ALEXANDER DAVIS, | ) | TENNESSEE |
| Defendant-Appellant. | ) | OPINION |

Before: STRANCH, BUSH, and MURPHY, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Michael Davis was convicted at trial of drug trafficking and firearm charges stemming from a controlled sale of narcotics. At trial, the Government introduced evidence of Davis's involvement in past uncharged drug transactions, and the district court issued limiting instructions regarding how the jury could consider this evidence. Davis appeals the district court's admission of this evidence and the timing of the limiting instructions. For the following reasons, we **AFFIRM**.

## I. BACKGROUND

This case arises from a controlled sale of narcotics between Defendant-Appellant Michael Davis and two confidential informants. The following facts are drawn from the evidence presented at Davis's trial.

In October 2020, an agent with the North Carolina Drug Enforcement Administration put two confidential informants in contact with the Nashville DEA. One informant was Octavio Serrano, known as Tavo, and the second was his brother, who died prior to Davis's trial. In July 2020, Davis reached out to Serrano's associate, Alan Martinez, to make a deal involving narcotics with Serrano. In September 2020, Davis contacted Serrano directly to set up the deal, while continuing to communicate with Martinez. Under the Nashville DEA's oversight, Serrano claims that he arranged to sell Davis ten kilograms of cocaine in early October 2020. On October 7, 2020, Serrano, his brother, and Davis met at a restaurant to discuss the deal, which was set to occur the following day. Law enforcement provided Serrano's brother with a recording device and observed Davis arriving at the restaurant.

On October 8, 2020, Davis came to a gas station for the planned meeting. Serrano and his brother, who wore the recording device, entered Davis's car and observed that there was cash for the transaction inside. As they exited Davis's vehicle, they signaled to law enforcement that they had observed the money in Davis's car. Law enforcement then announced themselves and moved in to arrest Davis, who pulled out what appeared to be a firearm and fled from the officers. After a brief pursuit, the agents took Davis into custody and, tracing his steps, found the discarded firearm. Agents searched Davis's vehicle, where they recovered over $300,000 in cash and three cellphones, from which they later recovered text messages between Davis and the confidential informants.

On January 22, 2024, a grand jury indicted Davis for attempted possession of cocaine with the intent to distribute on or about October 8, 2020, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count 1); unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924 (Count 2); and possession of a firearm in furtherance of a drug trafficking

crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 3). At trial, the Government presented testimony from Serrano, law enforcement agents, an expert witness, as well as audio recordings from Davis's meetings with the confidential informants and text messages between Davis and various individuals. Davis contended that he was pressured to set up the October 8 meeting with Serrano to pay off a past drug debt—not to purchase narcotics. The court acquitted Davis on Count 3 and submitted the case to the jury, which found Davis guilty on Counts 1 and 2.

Davis timely appealed.

## II.    LEGAL ANALYSIS

On appeal, Davis challenges the district court's evidentiary decisions in three ways. First, he argues that the court failed to provide limiting instructions at specific points in the trial. Second, he asserts that the court erred in admitting evidence of prior drug transactions as *res gestae* evidence. And finally, he contends that the court also erred by admitting evidence of prior drug transactions under Federal Rule of Evidence 404(b). We address each argument in turn.

### A.    Limiting Instruction

Where a court admits evidence for one purpose only, "the court, on timely request, must restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105. A court is required to provide a limiting instruction "only upon the request of one of the parties." *United States v. Fraser*, 448 F.3d 833, 839 n.3 (6th Cir. 2006) (citation modified). At Davis's trial, the district court admitted multiple Government exhibits that required limiting instructions, including those containing *res gestae* evidence and 404(b) evidence. The court issued a limiting instruction when it admitted all the *res gestae* exhibits and a separate limiting instruction when it admitted the 404(b) exhibits. The court issued both instructions a second time during the final jury instructions.

On appeal, Davis contends that, although the court issued the instructions when it admitted the exhibits, it erred by failing to issue an instruction each time the Government presented a *res gestae* or 404(b) exhibit to the jury. The record shows, however, that Davis did not ask the court to issue a limiting instruction each time an exhibit was presented to the jury, nor did he object to the timing of the court's instructions. For example, when the court indicated it would issue a limiting instruction as each batch of *res gestae* and 404(b) exhibits were admitted—as opposed to exhibit-by-exhibit—defense counsel did not respond or object. When the court admitted the group of *res gestae* exhibits and issued a limiting instruction, defense counsel did not object. And when it admitted the group of 404(b) exhibits, the court asked counsel if it would be an appropriate time to issue a limiting instruction. Defense counsel responded "I think so." When the Government published Exhibit 37 to the jury, defense counsel asked whether the court would issue the limiting instruction again, and the court responded that it was "going to be in the final instructions." Defense counsel did not ask the court to issue the instruction again at that moment or object to the court's decision not to do so.

Because defense counsel did not request that an instruction be issued contemporaneously with the publication of each exhibit, nor object to the timing of the limiting instructions, we review for plain error. *See Fraser*, 448 F.3d at 841. Under plain error review, we "must decide whether (1) there was an error in the district court, (2) the error was plain, (3) the plain error affected the defendant's substantial rights, and (4) the plain error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id.*

We have held that "an instruction should be given immediately to cure the prejudicial effect of [prior bad acts] testimony," *United States v. Latouf*, 132 F.3d 320, 329 (6th Cir. 1997), and have explained that "it is within the trial judge's discretion to decide whether to give the limiting

instruction contemporaneous with the introduction of the evidence or during final instructions," *United States v. Chance*, 306 F.3d 356, 388 (6th Cir. 2002). The court here did both—it issued the instructions when admitting each group of exhibits and again in its final jury instructions. Davis has not pointed to any precedent suggesting that the failure to give an instruction each time an exhibit is presented to the jury—as opposed to when each group is admitted—is error. And although Davis points out that the limiting instruction for Exhibit 37 was given on the second day of trial while the exhibit was not presented to the jury until the next morning, "in light of all of the other evidence presented" at trial, we find that "it did not materially affect the verdict." *Latouf*, 132 F.3d at 329. On this record and under governing precedent, we cannot say that the court plainly erred in issuing instructions when admitting each group of exhibits as opposed to when each individual exhibit was presented to the jury.

Accordingly, we hold that the district court did not plainly err in how it issued the limiting instructions.

### B.      *Res Gestae* **Evidence**

Davis asserts that the district court erred in admitting evidence of prior drug transactions as *res gestae* evidence. Federal Rule of Evidence 404(b) generally "prohibits the admission of evidence of a criminal defendant's prior bad acts." *United States v. Johnson*, 95 F.4th 404, 417 (6th Cir. 2024). One exception to this rule is *res gestae* evidence,[1] which is evidence of "other acts that are inextricably intertwined with the charged offense." *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). This "may include evidence that is a prelude to the charged offense, is directly probative of the charged offense, arises from the same events as the charged offense, forms an integral part of the witness's testimony, or completes the story of the charged offense."

---

[1] *Res gestae* is sometimes known as intrinsic evidence or background evidence.

*Johnson*, 95 F.4th at 417 (citation modified). We generally review the decision to admit *res gestae* evidence for an abuse of discretion. *Id.*

Davis argues that the district court erred in admitting Exhibits 24, 33, and 34[2] because they were not intrinsic to the charged crime and were improper propensity evidence. Exhibit 24 consists of a series of text messages sent in late September and early October 2020 between Davis and a person known as "North Carolina" (likely the deceased confidential informant), allegedly communicating about the October 8 drug transaction. Exhibits 33 and 34 consisted of text messages between Davis and Martinez in July 2020, regarding drug transactions. At trial, the Government sought to introduce these exhibits as background evidence, saying that they were intrinsically related to the crime charged and were part of the same chain of communications setting up the drug transaction.

Davis concedes that he did not object to the introduction of these messages as improper *res gestae* evidence, and that therefore plain error review applies. We apply plain error review when "a party objects to the submission of evidence on specific grounds in the trial court, but on appeal the party asserts new grounds challenging the evidence." *United States v. Baker*, 458 F.3d 513, 519 (6th Cir. 2006) (quoting *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989)). As noted above, to succeed on plain error review, a plaintiff must identify "(1) [an] error (2) that 'was obvious or clear,' (3) that 'affected [his] substantial rights' and (4) that 'affected the fairness,

---

[2] Davis's briefing also notes that the district court admitted Exhibits 25, 29, and 35 as *res gestae* evidence, but it is unclear whether he is challenging their admission because he fails to make any argument as to why their admission was error. Issues "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation" are forfeited. *Buetenmiller v. Macomb Cnty. Jail*, 53 F.4th 939, 946 (6th Cir. 2022) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997)). To the extent Davis might have intended to challenge the admission of Exhibits 25, 29, and 35, he has forfeited this challenge.

integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)).

On appeal, Davis asserts that the district court plainly erred in admitting these exhibits because the text messages were too temporally remote from the October 8 drug transaction. There are "severe limitations as to temporal proximity, causal relationship, or spatial connections" when admitting *res gestae* evidence, *Johnson*, 95 F.4th at 417 (citation modified), but we need not decide whether the district court erred in admitting evidence of prior drug transactions if any such error was harmless because it did not affect the defendant's substantial rights. "Evidentiary errors are harmless when the record 'provide[s] us with "fair assurance" that the verdict was not "substantially swayed" by the error.'" *United States v. Knipp*, 138 F.4th 429, 436 (6th Cir. 2025) (quoting *United States v. Kettles*, 970 F.3d 637, 643 (6th Cir. 2020)).

In similar circumstances, we have refrained from "decid[ing] whether [a] district court erred by admitting evidence of [] prior drug sales [as *res gestae* evidence] because any error was harmless." *Id.* In *Knipp*, the district court admitted evidence of the defendant's prior drug sales as *res gestae* to explain the context of the charged drug transaction. *Id.* We noted that this evidence did not affect the defendant's substantial rights, and was therefore harmless, because of the substantial other evidence to convict, including evidence of controlled drug purchases with the defendant, a video recording of the transaction, agent testimony identifying the defendant, and Facebook messages discussing the transaction. *Id.* Similarly, the prosecution here presented overwhelming evidence to support a conviction, including Serrano's testimony about the October 8 meeting with Davis, law enforcement testimony regarding their observations of the October 8 meeting, audio recordings of a meeting with Davis prior to the transaction, and an audio recording of the October 8 meeting. On this record, therefore, we "need not decide whether the district court

erred by admitting evidence of the prior drug sales because any error was harmless" and "did not 'substantially sway' the jury's verdict." *Id.*

Accordingly, we affirm the admission of the *res gestae* evidence.

### C.      Rule 404(b) Evidence

Davis contends that the district court erred in admitting Exhibits 30, 31, and 37 because they constituted improper propensity evidence under Federal Rule of Evidence 404(b).  Under Rule 404(b), "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  A court, however, may admit evidence of prior bad acts "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Fed. R. Evid. 404(b)(2).  To determine the admissibility of 404(b) evidence, trial courts employ a three-part test.  First, the court determines whether there is sufficient evidence that the prior bad act occurred.  *United States v. Saine*, 162 F.4th 804, 809 (6th Cir. 2025).  Second, it considers whether the evidence is offered for a proper purpose.  *Id.*  And third, it analyzes whether the risk of unfair prejudice substantially outweighs the evidence's probative value.  *Id.*

Our cases have acknowledged some confusion over the applicable standard of review for a district court's decision to admit 404(b) evidence.  *United States v. Underwood*, 129 F.4th 912, 937 (6th Cir. 2025).  In some cases, we have applied an abuse of discretion standard, under which a district court abuses its discretion "if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence."  *Id.* (quoting *Highmark Inc. v. Allcare Health Mgmt. Sys.*, 572 U.S. 559, 563 n.2 (2014)).  In other cases, we have applied a different standard to each part of the 404(b) analysis.  *United States v. Barnes*, 822 F.3d 914, 920–21 (6th Cir. 2016).

"Under that standard, we review the district court's finding that an act took place for clear error, we review the finding of proper purpose de novo, and we review the district court's balancing of prejudice for abuse of discretion." *Underwood*, 129 F.4th at 937. We need not, however, determine which formulation is correct because Davis's argument fails under either one.

On appeal, Davis specifically challenges the admission of Exhibits 30, 31, and 37. Exhibit 30 contains text messages between Davis and an unknown individual identified only as "Omar" sent in the week leading up to the October 8 controlled buy. In the text conversation, Omar sends Davis a photograph of compressed powder and asks what Davis thinks. Davis responds, asking "wat percent?" Exhibit 31 contains text messages between Omar and Davis, in which they exchange pictures and videos of compressed powder on October 5 and 6. In one exchange, Davis sends Omar a video of compressed powder and tells him that "[i]t is not [as] good as yours." Exhibit 37 consists of text messages between Davis and an unknown individual sent in May 2020, in which that individual asks Davis where the "white girl" is. Davis responds that he is only selling "zips." An DEA agent explained that "white girl" most likely refers to cocaine and "zips" is slang for an ounce of narcotics.

The parties first dispute whether the prior bad acts took place. Davis contends that there is no evidence that he completed a drug transaction with Omar or the unknown individual. The Government asserts it need only show that Davis sent the text messages because the prior bad act it sought to establish was not that a drug transaction occurred, but that Davis was discussing distributing cocaine. Davis does not dispute that he sent the text messages, the Government's expert witness testified that terms used in the messages suggested Davis was selling cocaine, and photographs and videos sent in the messages depicted compressed powder substances.

We conclude that there was sufficient evidence in the record to determine that the prior bad acts—texting about possessing and distributing narcotics—occurred.

Next, the parties dispute whether Exhibits 30, 31, and 37 were offered for a permissible purpose and whether they were unduly prejudicial. The Government asserts that the evidence was offered to show an intent to distribute and a lack of duress and was not unfairly prejudicial because it concerned prior conduct that was similar to, and close in time with, the charged offense. Davis counters that because his relationship to Omar and the other individual is unknown, the text messages between them have no bearing on whether Davis acted under duress during the October 8 controlled sale and were therefore unfairly prejudicial.

"The use of past drug dealing to demonstrate drug dealing on a specific occasion runs very close to the prohibitions of Rule 404." *Underwood*, 129 F.4th at 937. Our precedent, however, indicates that when the defendant is charged with a crime requiring a specific intent, such as the intent to distribute, courts may admit evidence of past drug dealing to prove that intent. *Id.* Here, Exhibit 37 contains a conversation in which Davis appears to sell cocaine, offering the unknown individual "white girl" and explaining in what quantities he sells it. This evidence of past drug dealing, therefore, was offered for the proper purpose of showing Davis's specific intent to distribute any narcotics he purchased on October 8.[3] Davis makes similar arguments regarding prejudice, but because these messages show Davis engaging in distribution of cocaine in the months leading up to the large drug transaction on October 8, and were therefore "connected directly to evidence of participation in the business of drug dealing," they were not unfairly prejudicial. *See Underwood*, 129 F.4th at 938.

---

[3] Davis appears to concede that Exhibit 37 was admitted for a proper purpose because he does not meaningfully argue otherwise in his Reply Brief.

Exhibits 30 and 31 are a closer call because they do not directly depict Davis selling cocaine but, instead, merely possessing or discussing narcotics. We have held that "[m]ere possession of a controlled substance is not sufficiently similar to distribution to be probative of a specific intent to distribute controlled substances." *United States v. Carter*, 779 F.3d 623, 627 (6th Cir. 2015). The Government, however, also offered these exhibits to rebut Davis's argument that, though he used to be a drug dealer, he was no longer involved in dealing and only went to the October 8 controlled sale to settle an old drug debt. The introduction of Exhibits 30 and 31, which depict Davis discussing narcotics and exchanging images and videos of narcotics, serve as evidence rebutting his argument that he was no longer involved in drug dealing. Davis himself, moreover, acknowledges that some of the messages seemed to be probative of a lack of duress. Because the messages were offered for a permissible purpose, and because they were sent only a few days before the October 8 drug transaction, we find that they were not unduly prejudicial.

Accordingly, the court did not err in admitting the 404(b) evidence.

### III.   CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's evidentiary rulings.